UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:18-cv-20543

JACQUELINE FRIDMAN,
individually and on behalf of all
others similarly situated,

        **CLASS ACTION**

    Plaintiff,

        **JURY TRIAL DEMANDED**

v.

DEM JET, INC. d/b/a Jets.com,
a New York corporation,

    Defendant.
_____/

**CLASS ACTION COMPLAINT**

Plaintiff Jacqueline Fridman brings this class action against Defendant Dem Jet, Inc. d/b/a Jets.com, and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her counsel.

**NATURE OF THE ACTION**

    1.    This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), arising from Jets.com's knowing and willful violations of the TCPA.

    2.    Jets.com is a private jet charter and jet rental company that deems itself the "leader in private travel." (https://www.jets.com/about-us/, last visited Feb. 12, 2018.)

    3.    To boost its profits, Jets.com engages in unsolicited telemarketing, with no regard for consumers' privacy rights.

    4.    This case arises from the transmission of telemarketing text messages to Plaintiff's and other consumers' cellular telephones promoting Jets.com's private jet charter and jet rental services.

1

5. Through this action, Plaintiff seeks injunctive relief to halt Jets.com's illegal conduct which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily lives of thousands of individuals. Plaintiff also seeks statutory damages on behalf of herself and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

6. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state than Jets.com. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of federal question jurisdiction and CAFA diversity jurisdiction are present.

7. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Jets.com is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Jets.com provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Jets.com's tortious conduct against Plaintiff occurred within this district and, on information and belief, Jets.com has sent the same text messages complained of by Plaintiff to other individuals within this judicial district, subjecting Jets.com to jurisdiction here.

## PARTIES

8. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Miami-Dade County, Florida.

9. Defendant Dem Jet, Inc. d/b/a Jets.com is a New York corporation with its principal place of business located 140 Broadway, 46th Floor, New York, NY 10005. Jets.com directs, markets, and provides its business activities throughout the State of Florida.

## THE TCPA

10. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

11. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

12. The TCPA exists to prevent communications like the ones described within this Complaint. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

13. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

14. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and

inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

15. In 2012, the FCC issued an order further restricting automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (F.C.C. 2012) (emphasis supplied).

16. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and [the plaintiff] having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. at 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71.

17. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

18. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

19. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12)); *In re Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. at 14098 ¶ 141).

20. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, ¶¶ 139-142 (F.C.C. 2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

21. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. at 14014, ¶ 136.

22. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C.R. 7961, 7991-92 (F.C.C. 2015) (requiring express consent "for non-telemarketing and non-advertising calls").

23. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

24. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## FACTS

25. On January 30, 2018 at 12 pm and 3:30 pm, Jets.com, using an automated text-messaging platform, caused text messages to be transmitted to Plaintiff's cellular telephone number ending in 4297 (the "4297 Number"):



26. The links contained in the text messages are links to Jets.com's SMS landing page hosted by Go4Clients.com.

27. The text messages constitute telemarketing because the text messages, and the SMS landing page they directed recipients to, encouraged the purchase of private jet travel services from Jets.com.

28. Plaintiff received the subject text messages within this judicial district and, therefore, Jets.com's violations of the TCPA occurred within this district. Upon information and belief, Jets.com caused other text messages to be sent to individuals residing within this judicial district.

29. At no point in time did Plaintiff provide Jets.com with her express written consent to be contacted by text using an ATDS.

30. Plaintiff is the subscriber and sole user of the 4297 Number, and is financially responsible for phone service to the 4297 Number.

31. The impersonal and generic nature of the text messages demonstrates that Jets.com utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("the generic, impersonal nature of the text message advertisements") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner); *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725 at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

32. Specifically, upon information and belief, Jets.com utilized a combination of hardware and software systems, including an automated text messaging platform made available by Go4Clients, to send the text messages at issue in this case. The systems utilized by Jets.com have the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention. *E.g., Johnson v. Yahoo!, Inc.*, No. 14 cv 2028, 2014 U.S. Dist. LEXIS 171325 (N.D. Ill. Dec. 11, 2014) ("Every ATDS requires some initial act of human agency — be it turning on the machine or pressing 'Go.' It does not follow, however, that every subsequent call the machine dials — or message it sends — is a product of that human intervention.").

33. Jets.com's unsolicited text messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Jets.com's text messages also inconvenienced Plaintiff and caused disruption to her daily life. *See Patriotic Veterans, Inc. v. Zoeller*, No. 16-2059, 2017 WL 25482, at *2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious.").

## CLASS ALLEGATIONS

### PROPOSED CLASS

34. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

35. Plaintiff brings this case on behalf of a Class defined as follows:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message to their cellular telephone number by Jets.com, or anyone on Jets.com's behalf, using an automatic telephone dialing system, without emergency purpose and without the recipient's prior express consent.**

36. Jets.com and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

37. Upon information and belief, Jets.com placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

38. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Jets.com's call records.

### COMMON QUESTIONS OF LAW AND FACT

39. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

 (1) Whether Jets.com made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;

 (2) Whether Jets.com can meet its burden of showing that it obtained prior express written consent to make such calls;

 (3) Whether Jets.com's conduct was knowing and willful;

 (4) Whether Jets.com is liable for damages, and the amount of such damages; and

 (5) Whether Jets.com should be enjoined from such conduct in the future.

40. The common questions in this case are capable of having common answers. If Plaintiff's claim that Jets.com transmitted text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

41. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

42. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

43. A class action is superior to all other available methods for the fair and efficient

adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Jets.com's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

44. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Jets.com. For example, one court might enjoin Jets.com from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
## Violations of the TCPA, 47 U.S.C. § 227(b)

45. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

46. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

47. "Automatic telephone dialing system" refers to any equipment that has the "capacity to dial numbers without human intervention." *See, e.g., Hicks v. Client Servs., Inc.*, No. 07-61822, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009) (citing FCC, In re: Rules and

Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07–232, ¶ 12, n.23 (2007)).

48. Jets.com – or third parties directed by Jets.com – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class.

49. These calls were made without regard to whether Jets.com had first obtained express permission from the called party to make such calls. In fact, Jets.com did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

50. Jets.com has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

51. As a result of Jets.com's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

## COUNT II
### Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)

52. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

53. At all times relevant, Jets.com knew or should have known that its conduct as alleged herein violated the TCPA.

54. Jets.com knew that it did not have prior express consent to send these text messages.

55. Because Jets.com knew or should have known that Plaintiff and Class members had not given prior express consent to receive its autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

56. As a result of Jets.com's violations, Plaintiff and the Class members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**WHEREFORE**, Plaintiff Jacqueline Fridman, on behalf of herself and the other members of the Class, prays for the following relief:

   a. A declaration that Jets.com's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

   b. A declaration that Jets.com's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

   c. An injunction prohibiting Jets.com from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

   d. An award of actual, statutory damages, and/or trebled statutory damages; and

   e. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Jets.com take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communication or transmittal

of the text messages as alleged herein, including but not limited to those maintained by its agents Go4Clients Ltd. and Telintel Ltd. d/b/a Go4Clients.com.

Dated:  February 12, 2018

Respectfully submitted,

*/s/ Avi R. Kaufman*
Avi R. Kaufman (Florida Bar No. 84382)
KAUFMAN P.A.
400 NW 26TH Street
Miami, Florida 33127
Tel:  (305) 469-5881
Email: kaufman@kaufmanpa.com

*Counsel for Plaintiff Jacqueline Fridman*